**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JAMES ADEYEMI,      *

Plaintiff,        *

v.           *   Civil Action No. SAG-21-2060

OFFICE OF GENERAL COUNSEL FOR *
BOOTH POLICE OFFICERS, NATIONAL
SECURITY AGENCY,     *

Defendant.       *
           ***

## <u>MEMORANDUM OPINION</u>

   Self-represented Plaintiff James Adeyemi filed this civil action seeking damages resulting from his interaction with security officers on the campus of the National Security Agency ("NSA").  ECF 1.  Two motions are currently pending.  First, Mr. Adeyemi filed a "Motion to Change of Defendant Name," ECF 19, seeking to change the name of the Defendant from "Office of General Counsel for Booth Police Officers, National Security Agency" to "The Booth Police Officers of NSA."  That motion will be denied, because it essentially seeks to amend the complaint without following the procedures set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court.  *See* Fed. R. Civ. P. 15; Local Rule 103.6 (D. Md. 2021).  Nevertheless, for the purposes of the instant opinion, this Court will assume that Defendant has been identified as "The Booth Police Officers of NSA."

   Second, Defendant has filed a Motion to Dismiss the Complaint for failure to state a claim. ECF 16.  Mr. Adeyemi filed an opposition, ECF 17, and Defendant filed a reply, ECF 18. A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, Defendant's Motion shall be granted.

**Background**

The following facts are derived from Mr. Adeyemi's Complaint and are assumed to be true for purposes of this motion. Mr. Adeyemi is both deaf and homeless. ECF 2 at 1. He lives in his van and presently earns money as a driver for Roadie Inc. and for Postmates. *Id.* In the past, Mr. Adeyemi worked for DoorDash and often made deliveries, without incident, on the Fort Meade campus. *Id.* at 2.

On March 4, 2021, around noon, Mr. Adeyemi accepted a Roadie job to pick up items at a Michael's store and deliver the items to a customer living in Fort Meade, Maryland. *Id.* Mr. Adeyemi did not realize that the customer lived within the NSA campus. *Id.* He followed his GPS to the campus gate. *Id.* The first officer he encountered insisted that he approach the entry gate. Mr. Adeyemi showed the officer the customer's address on the Roadie app. *Id.* The officer told Mr. Adeyemi he could proceed through the gate to the entrance booth. *Id.* The second officer, at the entrance booth, also looked at the app with the customer's name and address. *Id.* The officer "laughed through his teeth" and told Mr. Adeyemi he could go through the gate and he would lead him to the address. *Id.* at 2-3. He told Mr. Adeyemi to follow, but instead of leading him to the customer he led him to another gate called "exit booth." *Id.* at 3. The first officer told Mr. Adeyemi to park next to the exit booth. *Id.*

Mr. Adeyemi provided his driver's license, permanent resident card, and current insurance. *Id.* Six or more white police officers all exited the booth. *Id.* The officers believed that Mr. Adeyemi's plate tag was invalid and his insurance was lapsed. *Id.* One of the officers, wearing a face mask, stood before Mr. Adeyemi and spoke quickly with his mask on. *Id.* Mr. Adeyemi told the officers he was deaf. *Id.* One officer apparently did not believe Mr. Adeyemi, since he asked if Mr. Adeyemi knew sign language and asked Mr. Adeyemi to fingerspell his first name. *Id.*

The first officer told Mr. Adeyemi that his vehicle would be impounded. *Id.* Mr. Adeyemi told the officer he sleeps in his vehicle and asked that the state police be called. *Id.* Mr. Adeyemi showed the officer a citation issued two weeks before by the state police, who did not impound his vehicle, but the officer was unpersuaded. *Id.* The first officer ordered Mr. Adeyemi to step out of the vehicle and open all of the doors. *Id.* A police dog sniffed the entire vehicle. *Id.* Three other officers then physically searched and "ransacked" the vehicle. *Id.* at 4. Mr. Adeyemi took a picture of his vehicle being searched, and an officer demanded Mr. Adeyemi's smartphone, hitting Mr. Adeyemi's hand as he grabbed for the phone. *Id.* Mr. Adeyemi deleted the picture rather than risk being hurt by the officer. *Id.*

The first officer told Mr. Adeyemi to remove personal belongings from the vehicle, since it would be impounded. *Id.* Mr. Adeyemi asked that state police handle the matter instead but the officers insisted on obtaining the vehicle key. *Id.* Because Mr. Adeyemi refused to yield the key, they handcuffed his hands behind his back. *Id.* Mr. Adeyemi eventually gave them the key but refused to turn over the remote button. *Id.* One of the officers removed the vehicle plate tags from the front and rear of the vehicle and Mr. Adeyemi was placed in the police vehicle to wait. *Id.*

A state police officer arrived about twenty minutes later and removed the handcuffs. *Id.* The state officer stated that he would give Mr. Adeyemi a ride since his vehicle was about to be impounded. *Id.* Upon reviewing Mr. Adeyemi's insurance documentation, the state officer asked the federal officers to release his vehicle back to him. *Id.* at 5. The federal officer refused, stating that Mr. Adeyemi's vehicle was on federal property and the tow truck had already arrived. *Id.* The tow truck driver told the state officer that Mr. Adeyemi would have to pay $202 to get his vehicle back. *Id.*

Mr. Adeyemi yielded the remote button to the state police officer, and the vehicle was

towed after Mr. Adeyemi retrieved his belongings. *Id.* The incident cost Mr. Adeyemi $260.00, because he had to pay $20.00 to an Uber driver and $240.00 to the towing company. *Id.* At the time he filed his Complaint in August, 2021, he still did not have valid plate tags on his vehicle. *Id.*

Mr. Adeyemi alleges that the officers violated his civil rights by discriminating against him on the basis of his race and his disability, and by unlawfully detaining him and searching and seizing his vehicle. *Id.* at 6-8.

**Standards of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to test the legal sufficiency of a complaint by way of a motion to dismiss. *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), aff'd sub nom., *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See In re Birmingham*, 846 F.3d at 92.

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the rule is to provide defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must

contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ....") (citation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff."  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), cert. denied, 565 U.S. 943 (2011).  But a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  "A court decides whether [the pleading] standard is met by separating the legal

conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937 (2012).

Because Plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), aff'd, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civil Action No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), aff'd 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

### Discussion

The incident underlying this case is unfortunate because it resulted from an entirely benign attempt to access NSA property. Mr. Adeyemi was unaware when he accepted the Roadie

assignment that he would be subjecting himself to such a heightened level of scrutiny.

Regardless of Mr. Adeyemi's knowledge, however, the booth officers at NSA are required and permitted to conduct thorough security checks of all vehicles and occupants seeking to enter the campus, even when such searches would exceed constitutional bounds if conducted on regular public streets. The campus is a protected installation closed to the public for security reasons, which means that persons seeking entry have no privacy right to be free from searches. *See United States v. Jenkins*, 986 F.2d 76, 78 (4th Cir. 1993). As an example, while reasonable suspicion or probable cause are the customary standards for vehicle searches and police dog investigations, such searches are permitted for entry into secure federal installations even if those legal standards have not been met. *See id.* The warrantless search of Mr. Adeyemi's vehicle, which undoubtedly felt additionally intrusive to him because his vehicle was also his place of residence, was therefore lawfully conducted. Taking Mr. Adeyemi's allegations in his Complaint as true, the officers acted with insensitivity to Mr. Adeyemi's living situation and his disability. Once he sought to enter the campus, however, the officers had a responsibility to investigate thoroughly Mr. Adeyemi and the contents of his vehicle.

Likely in part due to the officers' insensitivity, the interaction escalated in a less than positive manner. Mr. Adeyemi, after photographing the officers engaging in the search of the car, refused to turn over his smartphone to the officers, eventually agreeing to delete the picture. Similarly, Mr. Adeyemi refused to turn over his vehicle key fob upon request, leading to his being handcuffed and placed in the police vehicle for about twenty minutes until a state police officer arrived to drive him home. Neither of these incidents amounts to a constitutional deprivation. The federal officers had probable cause to arrest Mr. Adeyemi for driving without valid registration plates. Thus, even if his handcuffing and placement in the police vehicle escalated the interaction

to an arrest, the officers would be entitled to qualified immunity.  *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (noting that the officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.").  As long as an officer has probable cause to believe that an individual has committed a criminal offense (even a minor one) in the officer's presence, the arrest of the offender comports with the Fourth Amendment.  *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).  Under Maryland law, driving without valid registration is a misdemeanor.  Md. Code, Transp. § 27-101(a) ("It is a misdemeanor for any person to violate any of the provisions of the Maryland Vehicle Law unless" otherwise specified).  And although Maryland law limits the circumstances under which police officers may make arrests for misdemeanor traffic violations, *see* Md. Code, Transp. § 26-202, an arrest in violation of Maryland law does not, in and of itself, amount to a Fourth Amendment violation.  *Virginia v. Moore*, 533 U.S. 164, 176 (2008) ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and . . . while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections.").

Here, even the allegations in the Complaint establish that the officers had probable cause to believe Mr. Adeyemi's registration plates were invalid.  In fact, Mr. Adeyemi acknowledges that his plate tags were "expired."  ECF 2 at 3.  He simply contends, based on his interaction with another officer who gave him a warning two weeks prior, that the federal officers did not have to remove his tags and have the vehicle towed.  ECF 1-4 at 14.  However, the towing record Mr. Adeyemi attached to his Complaint, ECF 1-4 at 31, indicated that there was a "pickup on tags insurance lapse."  That document is corroborated by the MVA document showing that Mr. Adeyemi's registration was suspended, as a result of the insurance lapse, in December 2019, more

than a year before the incident at issue.  ECF 1-4 at 27.

While Mr. Adeyemi has alleged that he had valid insurance coverage as of March, 2021, he has not alleged that he had taken steps to restore his registration with MVA.  In fact, his concession that his tags were "expired" indicates he had not.  In those circumstances, the federal officers simply abided by the state's tag pickup order to prevent further use of the invalid registration plates.  And a vehicle not displaying registration plates must be towed, because it cannot lawfully operate on public streets.  *See* Md. Code, Transp. § 13-411(d) ("[A] person may not drive the vehicle on any highway in this State, unless there is attached to the vehicle and displayed on it . . . [a] registration plate or plates issued for the vehicle by the Administration for the current registration period").  Although it appears that the officer Mr. Adeyemi interacted with two weeks prior either did not ascertain the same information or made a decision just to issue a warning, according to the information contained in the Complaint, these officers acted in accordance with the law in searching and seizing Mr. Adeyemi's vehicle.

Because Mr. Adeyemi has not alleged facts amounting to a violation of the Fourth Amendment or any other "clearly established" constitutional right, the booth police officers would be entitled to qualified immunity as to his claims.  *See Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 907 (4th Cir. 2016) ("Qualified immunity shields government officials from liability for civil damages, provided that their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person.").

Additionally, Mr. Adeyemi's allegations of race and disability discrimination are not properly pled.  While, again, it was insensitive of the officers to question Mr. Adeyemi's asserted disability, Mr. Adeyemi does not allege that he received disparate treatment as compared to any hearing individual attempting to enter the NSA campus with invalid registration tags.  Similarly,

Mr. Adeyemi's allegations pertaining to race are limited to the fact that the federal officers on the scene were white and Mr. Adeyemi is black.  Mr. Adeyemi does not allege that the officers made any race-based comments and has not alleged facts suggesting that a similarly situated white driver with suspended registration plates ever received different treatment.  To the extent he intended to base his civil rights claims on equal protection grounds, then, he similarly has not pled a violation of his constitutional rights.

### Conclusion

For the reasons set forth above, Mr. Adeyemi's Motion to Change of Defendant Name, ECF 19, is denied.  Defendant's Motion to Dismiss, ECF 16, is granted, and the claims are dismissed without prejudice.  This case will be closed.

A separate Order follows.

December 20, 2021                                        _____/s/_____
                                                                        Stephanie A. Gallagher
                                                                        United States District Judge